# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS E. PETERSON, JR.,<br><br>Defendant. | Criminal Action No. 07-135 (JDB) |

## MEMORANDUM OPINION

Defendant Thomas E. Peterson, Jr. has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Peterson seeks relief based on Chambers v. United States, 555 U.S. 122 (2009), arguing that he was erroneously sentenced as a career offender when, under Chambers, one of his predicate offenses – failure to report to a halfway house – did not actually qualify as a "crime of violence." The Court concludes that Peterson's motion is both untimely and procedurally defaulted, and hence it will be denied.

## BACKGROUND

On October 1, 2007, Peterson and the government entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).[1] See Plea Agreement [ECF 30] 2. Peterson agreed to plead guilty to one count of unlawful possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and agreed that he

---

[1] A Rule 11(c)(1)(C) plea agreement lets the parties stipulate that "a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." See Fed. R. Crim. P. 11(c)(1)(C); United States v. Heard, 859 F. Supp. 2d 97, 98 (D.D.C. 2012). If a Rule 11(c)(1)(C) plea agreement is accepted, it is binding on the court. Fed. R. Crim. P. 11(c)(1)(C).

was accountable for more than 50 but less than 150 grams of cocaine base.  Plea Agreement 1.  The offense carried a mandatory minimum of five years' imprisonment and a statutory maximum of forty years' imprisonment.  See 21 U.S.C. § 841(b)(1)(B).  The parties agreed that ten years' imprisonment was the appropriate sentence.  Plea Agreement 2.

Peterson entered a plea of guilty in this Court, at which time the Court deferred its decision on whether to accept or reject the Rule 11(c)(1)(C) plea agreement, including the ten-year sentence, until after it had received the Presentence Investigation Report ("PSR") from the U.S. Probation Office.  10/1/07 Tr. of Plea Hr'g [ECF 44] 22-23.  The PSR determined that Peterson was a career offender under U.S. Sentencing Guidelines Manual ("U.S.S.G") § 4B1.1(a) based on "two prior felony convictions of either a crime of violence or a controlled substance offense," the first for "escape" and the second for distribution of cocaine.  See U.S.S.G. § 4B1.1(a); Gov't's Mem. in Opp'n to Def.'s Mot. [ECF 52] ("Gov't's Opp'n"), Ex. E ("PSR Excerpts") 5 (referencing Superior Court docket numbers 1999F0757 and 2005F6412); see also id. at 8-9.  Peterson's 1999 escape conviction was for failure to return to a halfway house.  PSR Excerpts 9.  The PSR calculated a total offense level of 31 and, because of Peterson's career offender status, a criminal history category of VI.  Id. at 5, 11.  As a result, Peterson's guidelines range was 188 to 235 months.  Id. at 12.

On January 11, 2008, after reviewing the PSR, the Court accepted the Rule 11(c)(1)(C) plea agreement and the agreed-upon sentence and sentenced Peterson to a term of 120 months' imprisonment, to be followed by a 60-month term of supervised release.  See 1/11/08 Tr. of Sent'g 18; Judgment [ECF 38] 2-3.  Peterson did not appeal his conviction or sentence.

On January 13, 2009, the Supreme Court held in United States v. Chambers that failure to report for incarceration or periodic imprisonment did not qualify as a "violent felony" under the

Armed Career Criminal Act ("ACCA"). See 555 U.S. at 126, 130.[2] Over two years later, on February 10, 2011, Peterson signed the instant § 2255 motion. See Def.'s Mem. in Supp. of Mot. [ECF 43-1] ("Def.'s Mot.") 15. As pro se filings must be construed liberally, see Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), absent evidence to the contrary, the Court will assume that Peterson delivered his motion to prison authorities on the date he signed it and hence will consider the motion filed on February 10, 2011, see Houston v. Lack, 487 U.S. 266, 270-71 (1988) (discussing prisoner mailbox rule); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

DISCUSSION

Peterson contends that this Court should vacate his sentence and remand the case for resentencing because under Chambers his escape conviction no longer qualifies as a conviction for a "crime of violence" on which career offender status may be based. See U.S.S.G. §§ 4B1.1(a), 4B1.2(a). The government "agrees with [Peterson] that his escape conviction, which is based on a failure to return on time to a halfway house, would no longer qualify as a 'crime of violence' pursuant to § 4B1.2, and therefore [Peterson] would not qualify as a 'career offender.'" Gov't's Opp'n 5. But, the government argues, Peterson is not entitled to relief under § 2255 because his claim is (1) untimely, (2) procedurally defaulted, and (3) not cognizable. Id. at 5-6. The Court will address these arguments in turn.

I.      Timeliness

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets a one-year limitation

---

[2] In Begay v. United States, 553 U.S. 137, 148 (2008), decided less than one year before Chambers, the Court had similarly held that driving under the influence did not qualify as a violent felony under the ACCA.

period for filing a motion under § 2255. See 28 U.S.C. § 2255(f). The limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The government argues that Peterson's motion is time-barred because he filed it after the one-year limitation period expired. Because Peterson did not appeal, his judgment of conviction became final on January 28, 2008, the date on which the time for seeking direct review expired. See Fed. R. App. P. 4(b)(1)(A)(i) (2008); United States v. Ingram, — F. Supp. 2d. —, 2012 WL 6086916, at *3 (D.D.C. 2012); cf. Clay v. United States, 537 U.S. 522, 527 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Peterson filed his § 2255 motion (at the earliest) on February 10, 2011, more than three years after this date. Accordingly, if the one-year limitation period began to run on "the date on which the judgment of conviction [became] final," Peterson's motion was untimely. See 28 U.S.C. § 2255(f)(1).

The one-year limitation period may instead begin to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." See id.

§ 2255(f)(3). Assuming arguendo that Chambers recognized a new right that is retroactively applicable to cases on collateral review,[3] the limitation period would have run from January 13, 2009, the date Chambers was decided. See Dodd v. United States, 545 U.S. 353, 357-58 (2005). But even if the one-year limitation period was not triggered until this later date, Peterson's motion – filed more than two years after Chambers was decided – was still untimely.

Recognizing that his claim is "(arguably) time-barred under the AEDPA," Peterson argues that he is entitled to equitable tolling. See Def.'s Reply [ECF 53] 3; see also Def.'s Mot. 6-8. The D.C. Circuit recently held, for the first time, that equitable tolling applies to motions filed under § 2255. United States v. McDade, 699 F.3d 499, 504 (D.C. Cir. 2012). A § 2255 movant is entitled to equitable tolling only if (1) "he has been pursuing his rights diligently" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." See Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted), quoted in McDade, 699 F.3d at 504; accord United States v. Pollard, 416 F.3d 48, 56 (D.C. Cir. 2005); United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000) ("Equitable tolling, which is to be employed only sparingly in any event, has been applied in the context of the AEDPA only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." (internal quotation marks and citation omitted)). A showing of extraordinary circumstances generally

---

[3] Although several courts of appeals have held that Begay and/or Chambers apply retroactively on collateral review, the retroactivity question remains open. Compare, e.g., Jones v. United States, 689 F.3d 621, 627 (6th Cir. 2012) (concluding that Begay was a new substantive rule and applied retroactively); Narvaez v. United States, 674 F.3d 621, 625 (7th Cir. 2011) ("[T]he Begay and Chambers decisions apply retroactively on collateral review."); United States v. Shipp, 589 F.3d 1084, 1091 (10th Cir. 2009) (holding Chambers retroactively applicable), with Jones, 689 F.3d at 625-26 n.3 (noting split among district courts); United States v. Giggey, 551 F.3d 27, 36 n.3 (1st Cir. 2008) (suggesting in dictum that Begay was not retroactive).

requires "more than just [a defendant's] status as pro se or his limited access to a law library." See Jones, 689 F.3d at 627; see also McDade, 699 F.3d at 505; Cicero, 214 F.3d at 203 ("The prisoner's ignorance of the law or unfamiliarity with the legal process will not excuse his untimely filing, nor will a lack of representation during the applicable filing period.").

Peterson has not shown that he has been pursuing his rights diligently, nor has he alleged any extraordinary circumstance that prevented him from timely filing his motion. See Holland, 130 S. Ct. at 2562. In fact, Peterson has offered no explanation for the more-than-two-year gap between the Supreme Court's decision in Chambers and the filing of his motion. Hence, the Court concludes that Peterson is not entitled to equitable tolling under the two-part test set forth in Holland. See McDade, 699 F.3d at 505 (finding diligent pursuit and extraordinary circumstances); Jones, 689 F.3d at 627-28 (same).

Rather than claim diligent pursuit and extraordinary circumstances, Peterson argues that equitable tolling is warranted because he is actually innocent of being a career offender under U.S.S.G. § 4B1.1. See Def.'s Reply 3. Some courts of appeals have held that AEDPA's one-year limitation period may be equitably tolled based on a credible claim of actual innocence. See, e.g., Cleveland v. Bradshaw, 693 F.3d 626, 631 (6th Cir. 2012); Rivas v. Fischer, 687 F.3d 514, 548 (2d Cir. 2012); Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (en banc); San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir. 2011); Lopez v. Trani, 628 F.3d 1228, 1230-31 (10th Cir. 2010). But others have held that a claim of actual innocence does not justify equitable tolling. See, e.g., Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005); Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002). The D.C. Circuit has not yet weighed in on this question. This Court need not decide it now, however, because even if § 2255's limitation period could be equitably tolled based on actual innocence, Peterson has not made a credible showing

6

that he is actually – that is, factually – innocent of the escape offense underlying his career offender status. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("Actual innocence means factual innocence, not mere legal insufficiency."); United States v. Gabaldon, 522 F.3d 1121, 1124 n.2 (10th Cir. 2008) (stating that "[a]ctual (factual) innocence is a ground for applying equitable tolling" but that defendant's arguments in his § 2255 motion "implicate[d] legal innocence, not factual innocence").

Assuming that the actual innocence exception applies in the noncapital sentencing context,[4] Peterson would have to show that he is "<u>factually</u> innocent of the conduct or underlying crime that serves as the predicate for [his] enhanced sentence." See McKay v. United States, 657 F.3d 1190, 1199 (11th Cir. 2011); see also United States v. Pettiford, 612 F.3d 270, 284 (4th Cir. 2010) ("[A]ctual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes."). But Peterson does not deny that he committed the offense of failing to return to a halfway house. He merely claims that, in light of Chambers, failure to return to a halfway house cannot be the predicate for a career offender sentence. This is an objection to the legal classification of Peterson's offense and is not based in fact. Hence, Peterson's claim that he is actually innocent of his career offender sentence cannot excuse his untimely filing.

---

[4] The Supreme Court has held that, in cases involving procedural default (as opposed to AEDPA's statute of limitations), the actual innocence exception applies to claims of actual innocence of the crime of conviction and claims of actual innocence of a capital sentence. See Schlup v. Delo, 513 U.S. 298, 327 (1995); Sawyer v. Whitley, 505 U.S. 333, 336 (1992). But the Supreme Court has declined to decide, and the courts of appeals disagree, whether the actual innocence exception extends to claims of actual innocence of a noncapital sentence. See Dretke v. Haley, 541 U.S. 386, 388-89 (2004); Gibbs v. United States, 655 F.3d 473, 477-78 & n.4 (6th Cir. 2011) (describing circuit split).

Because Peterson has shown neither diligent pursuit and exceptional circumstances nor factual innocence of his conviction or sentence, his motion will be denied as time-barred.

II.     Procedural Default

The government argues that Peterson's motion is not only time-barred, but also procedurally defaulted. In general, a defendant may not raise a claim on collateral review that he did not raise on direct review unless he can show "either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citations omitted).

Peterson did not appeal his conviction or sentence and has not specifically alleged cause and prejudice. In his reply, however, Peterson argues that "[i]t is not a procedural[] default when a defendant argues a claim under § 2255 that was not a [sic] meritorious at the time of his direct appeal." Def.'s Reply 2. The Court construes this as an argument for cause. At the time of Peterson's sentencing, the D.C. Circuit had held that escape from a halfway house constituted a crime of violence for purposes of the career offender guideline. See United States v. Lewis, 471 F.3d 155, 156-57 (D.C. Cir. 2006). Peterson is thus correct that challenging his career offender classification on direct appeal would likely have been futile. But the Supreme Court has said that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (internal quotation marks omitted). And at least two circuits have held claims like Peterson's procedurally defaulted even though they would have been rejected on appeal. See United States v. Gibson, 424 F. App'x 461, 466 (6th Cir. 2011) (arguments that "'legal basis for [Chambers] claim was not reasonably available to counsel'" before that decision "are not well-taken" (quoting Bousley, 523 U.S. at 622)); Lindsey v. United States, 615 F.3d 998, 1000-01 (8th Cir. 2010) (concluding that defendant had not shown cause even though Begay argument "was squarely foreclosed in this

8

circuit"). Following that precedent, this Court concludes that Peterson has not shown cause here.

Peterson also notes that he was sentenced to a below-Guidelines term of imprisonment pursuant to the Rule 11(c)(1)(C) plea agreement and argues that, "as a rational thinking person," he had no reason to appeal such a sentence. Def.'s Reply 2. Although Peterson's below-guidelines sentence may explain his failure to appeal, it cannot excuse his procedural default because, given the rationale for that sentence, Peterson has not shown prejudice. See United States v. Frady, 456 U.S. 152, 168 (1982) (finding it unnecessary to consider cause because no actual prejudice shown). The Rule 11(c)(1)(C) plea agreement does not reflect the parties' intent that Peterson's 120-month sentence be based on the career offender guidelines range (here, 188 to 235 months), and hence Peterson's term of imprisonment was not based on that range but on the plea agreement itself setting the 120-month sentence. See Freeman v. United States, 131 S. Ct. 2685, 2697-98 (2011) (Sotomayor, J., concurring); Plea Agreement 2. Because the Court imposed the sentence, not tied to any guidelines range, that Peterson agreed to in the binding plea agreement, see Fed. R. Crim. P. 11(c)(1)(C), he was not prejudiced by the determination that he was a career offender. See Bedewi v. United States, 583 F. Supp. 2d 72, 78 (D.D.C. 2008) (stating that defendant "fails to demonstrate the requisite prejudice if he received a sentence consistent with the terms of the [Rule 11(c)(1)(C)] plea agreement"); Winchester v. United States, 477 F. Supp. 2d 81, 86 (D.D.C. 2007) (same).

Finally, Peterson does not qualify for the actual innocence exception to procedural default because, as explained above, he alleges only legal insufficiency and not factual innocence of his 1999 escape conviction. See Bousley, 523 U.S. at 623. Accordingly, his claim is procedurally barred.

III.    Cognizability

The government argues that even if Peterson's claim were timely and not procedurally barred, his motion should be denied because it does not raise a claim that is cognizable under § 2255. Gov't's Opp'n 14.

A federal prisoner may collaterally attack a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The Supreme Court has said that a non-jurisdictional, non-constitutional error of law will not support a collateral attack under § 2255 "unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" See United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1979)). Lower courts have held that Sentencing Guidelines errors ordinarily are not cognizable on a § 2255 motion. E.g., Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc); Welch v. United States, 604 F.3d 408, 412 (7th Cir. 2010); United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999); Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999); Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (collecting cases). A guidelines error that results in a sentence "in excess of the maximum authorized by law" is cognizable, however. See 28 U.S.C. § 2255(a); see also id. § 2255(b) (providing for relief if "the sentence imposed was not authorized by law"); Welch, 604 F.3d at 412-13; Shipp, 589 F.3d at 1091.

The government contends that Peterson's claim of error in the application of the career offender guideline is not cognizable because such an error is not a "fundamental defect" permitting collateral relief if the sentence imposed does not exceed the statutory maximum. Here, Peterson's sentence of 120 months was well below the statutory maximum of forty years.

10

See Gov't's Opp'n 15-16.

There is disagreement among courts to have addressed this issue. In Sun Bear v. United States, the Eighth Circuit, sitting en banc, held in a 6-5 decision that a guidelines misapplication resulting in a sentence below the statutory maximum could not support a § 2255 claim. 644 F.3d at 705. The defendant in that case had been sentenced as a career offender, had challenged (unsuccessfully) the career offender determination on direct appeal, and had filed a § 2255 motion based on Begay within one year of that decision. Id. at 702. The majority found no "miscarriage of justice cognizable under § 2255" because the defendant's sentence was both below the statutory maximum and within the unenhanced, i.e., non-career offender, guidelines range. Id. at 705-06. The dissent would have held the claim cognizable, reasoning that the claim did not raise "a run-of-the-mill sentencing issue" but "fully preserved error in the context of new Supreme Court authority issued with retroactive effect as applied in a case that cannot pass a harmless error inquiry." Id. at 707, 712 (Melloy, J., dissenting).

The Seventh Circuit reached a conclusion contrary to the Sun Bear majority in Narvaez v. United States, holding that the defendant was entitled to § 2255 relief on his Chambers and Begay claim even though his sentence was below the statutory maximum. See 674 F.3d at 630. The court explained that the case presented "a special and very narrow exception" to the general rule that sentencing errors are not cognizable on collateral review: "[a] postconviction clarification in the law ha[d] rendered the sentencing court's decision unlawful." Id. at 627. Accordingly, the court concluded that "[t]he sentencing court's misapplication of the then-mandatory § 4B1.1 career offender categorization in Mr. Narvaez's case . . . clearly constitute[d]

a miscarriage of justice." Id. at 629.[5]

The Eleventh Circuit has expressly declined to consider the cognizability of a claim like that presented here. See Gilbert v. United States, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc) ("We do not decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion."); see also United States v. O'Neal-Sloane, 371 F. App'x 298, 301 (3d Cir. 2010) ("Arguably, an incorrect classification as a career offender would be a miscarriage of justice but O'Neal-Sloane does not present such a case.").

The government points out that, like the defendant in Sun Bear, Peterson was sentenced both below the statutory maximum and within the guidelines range that would have applied had he not been deemed a career offender. See Sun Bear, 644 F.3d at 705; Gov't's Opp'n 17. The government also stresses that Peterson's sentence "was and remains controlled by the Rule 11(c)(1)(C) plea agreement" and thus was not based on the career offender guidelines range in any event. See Gov't's Opp'n 17-18. In light of these considerations, and particularly the fact that Peterson's sentence was imposed under a Rule 11(c)(1)(C) plea agreement, the Court thinks it highly unlikely that the error asserted here amounts to a miscarriage of justice. See Addonizio, 442 U.S. at 185; Winchester, 477 F. Supp. 2d at 85 (Rule 11(c)(1)(C) plea agreement is binding on the court). But because Peterson's claim is both time-barred and procedurally defaulted, the Court need not also decide if it is cognizable under § 2255.[6]

---

[5] The Seventh Circuit has since suggested that the result "might" be different for a defendant sentenced under an advisory guidelines scheme. See United States v. Wyatt, 672 F.3d 519, 523 (7th Cir. 2012).

[6] See, e.g., McKay, 657 F.3d at 1195 ("Because we hold that McKay's sentencing claim is procedurally defaulted and that the actual innocence exception does not apply to excuse his default, we leave for another day the question of whether this type of claim is cognizable under § 2255 in the first instance.").

CONCLUSION

For the foregoing reasons, the Court will deny Peterson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[7] A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date: January 11, 2013

---

[7] The facts of this case are not disputed; hence, the Court concludes that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" and an evidentiary hearing is not necessary. See 28 U.S.C. § 2255(b); Pollard, 959 F.2d at 1031.